## THOMAS CAIN *vs.* WILLIAM SHUTT.

*Slander—Repetition—Instructions.*

In an action of slander, the evidence showed that there was a dispute between plaintiff and defendant as to the payment of goods bought by the former from the latter; that the defendant in the presence of strangers called the plaintiff a liar and a thief, and that on another occasion the defendant in the presence of third parties said to the plaintiff that he had called him a liar and thief and that he could prove it. It was not shown that the persons in whose presence the slanderous words were spoken had such knowledge of the circumstances as to understand that the defendant did not intend to impute to plaintiff the commission of a crime. *Held*, that the case should have been submitted to the jury, and it was error to instruct them that "it appearing from the plaintiff's own testimony that the language alleged to have been used by the defendant was not used as imputing a crime to the plaintiff and could not have been so understood by the bystanders, the verdict must be for the defendant."

The repetition of a slander may be considered by the jury in determining the presence or absence of malice on the part of the defendant in speaking the words charged in the declaration.

*Decided March 1st, 1907.*

Appeal from the Baltimore City Court (WRIGHT, J.)

The cause was argued before BRISCOE, BOYD, PEARCE, SCHMUCKER, BURKE and ROGERS, JJ.

Arthur L. Jackson, for the appellant.

No appearance for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

The appellant sued the appellee in the Baltimore City Court for slander. The declaration contained but one count. It averred that defendant, on a day named, at No. 608 East Baltimore street in the city of Baltimore falsely and maliciously spoke and published of and concerning the plaintiff the words following, that is to say: "You are a thief," "you are a beat," "you are a liar" and "you are a dead beat." The defendant pleaded not guilty.

On the trial of the case at the close of the plaintiff's evidence the Court granted the following prayer offered by the defendant: "It appearing from the plaintiff's own testimony that the language alleged to have been used by the defendant was not used as imputing a crime to the plaintiff and could not have been so understood by the bystanders the verdict must be for the defendant." The jury thereupon under the Court's direction rendered a verdict for the defendant and a judgment was entered thereon from which the present appeal was taken.

The plaintiff at the trial, after stating that there had been a dispute of about two years standing between him and the defendant over the bill for some goods purchased by him from the latter, testified as follows: "I came to Baltimore and brought his oil can back that he loaned me to take the oil in. I brought that can back and asked him how much money did I owe him. He said you know. I said I don't owe you for the oil. He said yes you do. I said I do not. He said you know devilish well you do. He said you are a thief. I said no sir I am no thief. He said you are a beat. I said no sir I am no beat. He said you are a liar and not only that you are a dead beat; he repeated those words several times and I contradicted him several times that I was no beat and no thief." A Mr. Hopwood at that juncture came into the store and according to the plaintiff's account the defendant having gone

back of the counter commenced to tell Hopwood that the plaintiff had come in there to beat him out of some money whereupon the plaintiff stepped up to him and said "No I am not trying to beat him out of any money, I am trying to explain that I had already paid him for the oil. He said you are a liar, you are a thief and he repeated it right over again before Mr. Hopwood and then I walked. out." The plaintiff further testified that when the defendant applied to him the language complained of there were in the store besides Mr. Hopwood a young clerk about fifteen or sixteen years old and also a gentlemen about fifty-five or sixty-five years old neither of whom were personally known to the plaintiff.

Upon cross-examination the plaintiff said that the defendant was angry and acted very ugly when applying the objectionable epithets to him; and he answered "yes" to the question whether the language used by the defendant did not relate to the transaction of the non payment of the bill.

The plaintiff on re-direct examination testified that on the second day before the one on which the case was tried he was standing in the Court house by the side of his counsel who was engaged in conversation with Mr. R. T. Gill of the defendant's counsel when the defendant came up and said "I am your man, you have no case, I called him a liar and a thief and I can prove it." Mr. Gill was put upon the stand by the plaintiff and fully corroborated his account of what the defendant had said at the interview in the Court house.

With this evidence in the case we think the Court below erred in taking the case from the jury. There was clear proof of the application by the defendant to the plaintiff of an epithet actionable *per se* at the interview in the store in the presence of three other persons and of the repetition of the same expressions in the Court house, accompanied by the assertion that he could prove their truth, in the presence of the counsel for both parties. There was evidence from which a jury might have concluded that the slanderous words used in the interview at the store were uttered in heat and not wantonly or through spite or hatred or even under such circumstances as

to indicate, to persons fully informed of the occasion of their utterance an intention to impute to the plaintiff the commission of theft. But no such mitigating conditions attach to the voluntary and unprovoked repetition, at the interview at the Court house, of the same charges accompanied by an assertion of an ability to prove them. Nor does it appear that the clerk or the gentleman who stood by the stove at the interview in the defendant's store had such knowledge of the circumstances under which the slanderous words were uttered as to know that the defendant did not intend to impute to the plaintiff the commission of a crime. The mere fact that those two persons were present in the store of the defendant when he uttered the slanderous words, without proof that their position were such that they must have heard the entire conversation between the plaintiff and defendant, and that they were familiar with the nature of the dispute between them, did not justify the Court in instructing the jury that the defendant's language could not have been understood by the bystanders as imputing a crime to the plaintiff.

The jury were also entitled to consider the repetition of the slanderous words by the defendant at the interview in the Court house, mentioned in the testimony, in determining the presence or absence of malice of the defendant in speaking the words laid in the declaration. This would have been true even if the words laid in the declaration had been uttered under circumstances of privilege. In *Garret* v. *Dickerson*, 19 Md. 450, this Court said, upon the authority of many cases there cited, "Although the occassion may be such as to justify the legal inference of privilege, yet the jury may look to the words themselves, in connection with other facts and circumstances than those from which the privilege is deduced, in passing upon the question of express malice, and evidence of any other words or acts having reference to the subject-matter of the actionable words may be submitted to the jury for the same purpose, whether such words or acts were spoken or done before or after suit brought." The same principle was asserted in *Duval* v. *Griffith*, 2 H. & G. 31, and *Boteler* v. *Bell*, 1 Md. 178.

In *Gambrill* v. *Schooley*, 95 Md. 290, we said, ''The mere utterance of defamatory words not privileged may afford no substantial evidence of malice in fact. They have been spoken in thoughtless though indiscreet jest, in unguarded repetition of idle rumor, or in momentary heat, free from real malice; but if it be shown that similar words referring to the same subject have been uttered with more or less frequency, either before or after those charged, a presumption is created, varying in strength with the frequency and character of such utterances that the words charged were not merely malicious in law but in fact." The rule there announced is in our opinion applicable with especial force to the present case.

The judgment appealed from must be reversed and the case remanded for a new trial.

> *Judgment reversed with costs and new trial awarded.*